AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Northern District of California

<table>
<tr><td>United States of America<br>v.<br><br>ZACHARY NORMAN GUYTON<br><br><br><br><i>Defendant(s)</i></td><td>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>Case No.3:26-mj-70141 MAG</td></tr>
</table>

**FILED**

Feb 17 2026

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___January 26, 2026___ in the county of ___San Francisco___ in the ___Northern___ District of ___California___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 111(a)(1) and 111(b)<br>18 U.S.C. § 113(a)(3) | Assault With a Deadly or Dangerous Weapon of a Person Assisting a Federal Officer or Employee<br>Assault With a Dangerous Weapon in Federal Jurisdiction<br>Maximum Penalties:<br>20 years' imprisonment - § 111(a)(1) / 10 years' imprisonment - § 113(a)(1)<br>3 years' supervised release<br>$250,000 fine<br>$100 special assessment |

This criminal complaint is based on these facts:

Please see attached affidavit of FBI Special Agent Gary F. Grzymala.

☑ Continued on the attached sheet.

/s
_____
*Complainant's signature*

Approved as to form *Kevin J. Barry*
AUSA _____

Gary F. Grzymala, Special Agent, FBI
_____
*Printed name and title*

Sworn to before me by telephone.

Date: ___02/17/2026___

_____
*Judge's signature*

City and state: ___San Francisco, California___

Hon. Laurel Beeler, U.S. Magistrate Judge
_____
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR COMPLAINT**

I, Gary F. Grzymala, Special Agent of the Federal Bureau of Investigation, being duly sworn, state the following:

**INTRODUCTION**

1.      I make this affidavit in support of an application under Rule 4 of the Federal Rules of Criminal Procedure for a criminal complaint and arrest warrant for Zachary Norman GUYTON for assault of an officer or employee of the United States Government or any person assisting such an officer or employee in the performance of such duties, in violation of Title 18, United States Code, Sections 111(a)(1) and 111(b), and for assault with a dangerous weapon, in violation of Title 18, United States Code, Section 113(a)(3) (hereafter, the "Target Offense"), on or about January 26, 2026, in the Northern District of California.

**SOURCES OF INFORMATION**

2.      This affidavit is submitted for the limited purpose of securing a criminal complaint and arrest warrant.  I have not included every fact known to me concerning this investigation.  Instead, I have set forth only the facts necessary to establish probable cause that violations of the federal law identified above have occurred.

3.      I have based my statements in this affidavit on my training and experience; personal knowledge of the facts and circumstances obtained through my participation in this investigation; information provided by law enforcement officers, including officers from the San Francisco Police Department ("SFPD") and the Federal Protective Service ("FPS"); information provided by reports prepared by other law enforcement officers; and information provided by records and databases.  Where I refer to conversations and events, I often refer to them in substance and in relevant part rather than in their entirety or verbatim, unless otherwise noted.

This affidavit also reflects my current understanding of facts relating to this investigation, but my understanding may change in the future as the investigation proceeds.

## AFFIANT BACKGROUND

4.      I am a Special Agent of the FBI and have been so employed since January 2018. Prior to joining the FBI, I spent approximately seven years employed with the Federal Air Marshal Service, where I became familiar with firearms, surveillance, and methodologies used by both criminals and terrorists to conceal their activities from law enforcement. I am currently assigned to the San Francisco Field Division of the FBI, where I investigate cases involving violent crimes and gangs. I have received law enforcement training throughout my employment.

5.      I have received formal training at the FBI Academy's Basic Agent Training in Quantico, Virginia. During this five-month course, I received several hundred hours of instruction in law enforcement investigations, including training related to violent crime, criminal case management, informant development, and criminal procedure. I have participated in numerous investigations, federal search warrants, and arrests involving alleged firearms violations, robbery, and violent crimes. Throughout my law enforcement career, and as part of my participation in this investigation, I have spoken with, worked with, and gained knowledge from numerous experienced federal, state, and local investigators who have written affidavits for, or participated in, the application for and execution of hundreds of search and arrest warrants over the course of their careers. I have also had discussions with other law enforcement officers and cooperating individuals about gang investigations, violent crimes, murder, arson, mail fraud, wire fraud, and drug trafficking.

6.      I am an investigator and law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations, to execute

2

search warrants, and to make arrests for offenses of Federal law, including offenses involving violent crimes.

## APPLICABLE STATUTES

7.     Title 18, United States Code, Section 111(a)(1) provides that it shall be unlawful for any person who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in Section 1114 of this title [referring to a person who is an 'officer or employee of the United States or of any agency in any branch of the United States Government' or any person 'assisting such an officer or employee in the performance of such duties'] while engaged in or on account of the performance of official duties." Section 111(b) provides an enhanced punishment for such assaults in which a deadly or dangerous weapon is used.

8.     Title 18, United States Code, Section 113(a)(3) provides that it shall be unlawful for a person to commit assault with a dangerous weapon with intent to do bodily harm within the special maritime and territorial jurisdiction of the United States.

## FACTS SUPPORTING PROBABLE CAUSE

**January 26, 2026 Assault**

9.     In the early morning hours of January 26, 2026, a Protective Service Officer (PSO) was assisting the Federal Protective Service in providing security for the Ninth Circuit's James R. Browning Courthouse at 95 7th Street, San Francisco, California, within the Northern District of California. The PSO observed a group of individuals loitering on federal property in the vicinity of the courthouse. The PSO made contact with the group and instructed them to pack up their belongings and move along. One individual, later identified as GUYTON, was sitting on a ledge of the courthouse with some belongings to his right. GUYTON did not respond to the PSO's instructions.

3

10.     The PSO approached GUYTON, shined his flashlight on GUYTON, and asked GUYTON if there was a problem.



11.     The PSO then looked at a bag on the right side of GUYTON and observed a large knife.  After seeing the knife, the PSO kicked the bag away from GUYTON to prevent him from easily accessing the weapon.

12.     According to the interview of the PSO as well as surveillance video of the interaction, after the PSO kicked the bag away from GUYTON, GUYTON stood up, drew a second knife, and quickly advanced on the PSO.  The PSO saw the knife and retreated from GUYTON into the street.

13.     A zoomed-in image of the interaction showing GUYTON beginning to advance on the PSO after drawing the knife is below.  GUYTON is on the left.



14.     An image showing GUYTON moving forward toward the PSO while brandishing the knife is below.



15.    A broader image showing the portion of the building where this took place is below.



16.    In the surveillance footage excerpted above, the PSO is seen retreating off camera backward into the street, with GUYTON moving toward him with the knife.  As the PSO was retreating, he drew his firearm.

17.    After the PSO drew his firearm, GUYTON stopped advancing on the officer.  A brief verbal exchange between GUYTON and the PSO took place, and although the existing video footage from a second camera is from a distance, the PSO then appeared to lower his weapon, as shown in the still images below.  When the PSO did so, GUYTON advanced toward him again.









18.     Another camera angle shows the PSO initially pointing his firearm at GUYTON but then putting the weapon down toward his waist after several seconds of their interaction.





19.    After the PSO lowered his weapon and looked down at his waist, GUYTON immediately went toward him.  In the circled image below, GUYTON can be seen with an extended arm moving toward the PSO.



20.     When GUYTON advanced again, the PSO brought his firearm back up and

discharged it approximately seven times, striking GUYTON approximately four times.  The PSO

later stated he was in fear for his life when he did so.  GUYTON fell to the ground near the curb

on Stevenson Street.  A United States Park Police officer who was driving by responded to the

shooting, as did SFPD.  GUYTON was taken to the hospital and later discharged.

21.     SFPD processed the crime scene and recovered two knives, one from the vicinity

of where GUYTON fell near the curb, and one from the vicinity of where GUYTON's

belongings were located.  The knife near where GUYTON fell had a white handle:



The knife near GUYTON's belongings had a black handle:



## **Additional Investigation Regarding Federal Jurisdiction**

22.    On January 30, 2026, I spoke with Federal Protective Service Inspector Glumas who informed me that he believed the altercation began on federal property because GUYTON was initially seated on part of the courthouse building for the Court of Appeals when PSO contacted him.  Inspector Glumas further advised that FPS was responsible for the physical security of the Court of Appeals courthouse building.  This security was part of the lease that the General Services Administration (GSA) had for the building.  After business hours in the

11

evening, the PSOs assist FPS with the security of the Court of Appeals courthouse building.

Inspector Glumas also believed there were "post orders" that included directions to the PSOs to

conduct routine foot patrols and attempt to disperse trespassers on the property.   Inspector

Glumas directed the FBI to the GSA for official delineation of the line of federal property.

23.    On January 30, 2026, I also spoke with GSA Property Manager Craig Ross who

informed me that the outer edge of the checkerboard granite on the ground indicated the end of

the federal property line and that the regular concrete sidewalk was city property.   The

checkerboard granite and the beginning of the sidewalk can be seen in the image below.



**CONCLUSION**

24.    Based on my training and experience, my participation in this investigation, and

the information summarized above, there is probable cause to believe that on January 26, 2026,

in the Northern District of California, Zachary Norman GUYTON committed the crime of

assault of a federal officer or employee or a person assisting a federal officer or employee in

violation of Title 18, United States Code, Sections 111(a)(1) and 111(b) and the crime of assault

with a dangerous weapon, in violation of Title 18, United States Code, Sections 113(a)(3).

12

I declare under penalty of perjury that the above is true and correct to the best of my knowledge and belief

/s.

_____

Gary Frank Grzymala
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me via telephone on this 17th day of February, 2026.

_____

HON. LAUREL BEELER
United States Magistrate Judge

13